**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| **TWIN K CONSTRUCTION, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:21-cv-00074-KAC-DCP** |
| | ) | |
| **UMA, GEOTECHNICAL** | ) | **Judge Katherine A. Crytzer** |
| **CONSTRUCTION, INC.,** | ) | **Magistrate Judge Debra C. Poplin** |
| | ) | **JURY TRIAL DEMANDED** |
| **Defendant.** | ) | |
| | ) | |

---

## UMA, GEOTECHNICAL CONSTRUCTION, INC.'S
## ANSWER & COUNTERCLAIM

---

Defendant UMA, Geotechnical Construction, Inc. ("UMA"), by and through undersigned counsel, hereby answers the Complaint filed by Plaintiff Twin K Construction, Inc. ("Twin K") and sets forth its Counterclaim. Except as expressly admitted herein, UMA denies all allegations contained in the Complaint.

1.      The allegations contained in Paragraph 1 of the Complaint are admitted upon information and belief.

2.      The allegations contained in Paragraph 2 of the Complaint are admitted.

3.      It is admitted that attached to the Complaint as Attachment 3 is a document entitled "Subcontractor Agreement" and the contents of that document speak for themselves.   Any allegations contained in Paragraph 3 of the Complaint that are inconsistent or different from the contents of Attachment 3 are denied.   It is admitted that the parties are corporate citizens of different states, the parties have principal places of business in different states, that the amount in controversy exceeds $75,000 exclusive of interest and costs and that this Court has jurisdiction

pursuant to 28 U.S.C. § 1332(a)(1) and (c)(1). All other allegations contained in Paragraph 3 of the Complaint are denied.

4.      The allegations contained in Paragraph 4 of the Complaint are admitted.

5.      The allegations contained in Paragraph 5 of the Complaint are admitted upon information and belief.

6.      The allegations contained in Paragraph 6 of the Complaint are admitted upon information and belief.

7.      It is admitted that the Prime Contract between the Tennessee Department of Transportation ("TDOT") and Twin K (the "Prime Contract") and the notice to proceed are written documents, and the contents of those documents speak for themselves. Any allegations contained in Paragraph 7 of the Complaint that are inconsistent or different from the contents of those documents are denied. All other allegations contained in Paragraph 7 of the Complaint are denied.

8.      It is admitted that the Prime Contract between TDOT and Twin K is a written document, and the contents of that document speak for themselves. Any allegations contained in Paragraph 8 of the Complaint that are inconsistent or different from the contents of that document are denied. All other allegations contained in Paragraph 8 of the Complaint are denied.

9.      It is admitted that attached to the Complaint as Attachment 1 is a document titled "State of Tennessee Notice to Contractors of State Highway Construction Bids to be Received June 21, 2019" and the contents of that document speak for themselves. Any allegations contained in Paragraph 9 of the Complaint that are inconsistent or different from the contents of that document are denied. It is further admitted that bid materials for the Prime Contract are a matter of public record. All other allegations contained in Paragraph 9 of the Complaint are denied.

10. It is admitted that UMA is in the business of, among other things, designing and constructing retaining walls such as the walls for the Project, and that prior to June 21, 2019, UMA reviewed the Notice to Bidders for the Project. It is further admitted that attached to the Complaint as Attachment 2 is a document dated June 21, 2019, referencing UMA Proposal No. 19-49080 to Twin K, that the contents of that document speak for themselves, and that UMA forwarded the Proposal from its offices in Guilford County, North Carolina to Twin K via email. Any allegations contained in Paragraph 10 of the Complaint that are inconsistent or different from the contents of that document are denied. All other allegations contained in Paragraph 10 of the Complaint are denied.

11. It is admitted that Twin K and UMA negotiated a subcontract for the Project, that UMA executed the subcontract in its offices in Guilford County, North Carolina, and that UMA forwarded the executed subcontract to Twin K via email. It is further admitted that attached to the Complaint as Attachment 3 is a document titled "Subcontractor Agreement", and the contents of that document speak for themselves. Any allegations contained in Paragraph 11 of the Complaint that are inconsistent or different from the contents of that document are denied. UMA lacks knowledge or information sufficient to form a belief as to the truth of the other allegations contained in Paragraph 11 of the Complaint and the same are therefore denied.

12. It is admitted that attached to the Complaint as Attachment 3 is a document titled "Subcontractor Agreement", and the contents of that document speak for themselves. Any allegations contained in Paragraph 12 of the Complaint that are inconsistent or different from the contents of that document are denied.

13. It is admitted that attached to the Complaint as Attachment 3 is a document titled "Subcontractor Agreement", and the contents of that document speak for themselves. Any

allegations contained in Paragraph 13 of the Complaint that are inconsistent or different from the contents of that document are denied.

14.     It is admitted that attached to the Complaint as Attachment 4 is a document titled "State of Tennessee Department of Transportation Proposal Contract for the Construction of Contract No. CNT234", and the contents of that document speak for themselves.  It is further admitted that attached to the Complaint as Attachment 5 is a document which appears to be TDOT's Standard Specification Section 108.09 and that the contents of that document speak for themselves.  Any allegations contained in Paragraph 14 of the Complaint that are inconsistent or different from the contents of those documents are denied.  All other allegations contained in Paragraph 14 of the Complaint are denied.

15.     It is admitted that attached to the Complaint as Attachment 3 is a document titled "Subcontractor Agreement", and the contents of that document speak for themselves.  Any allegations contained in Paragraph 15 of the Complaint that are inconsistent or different from the contents of that document are denied.

16.     It is admitted that attached to the Complaint as Attachment 3 is a document titled "Subcontractor Agreement," that attached to the Complaint as Attachment 4 is a document titled "State of Tennessee Department of Transportation Proposal Contract for the Construction of Contract No. CNT234," that attached to the Complaint as Attachment 5 is a document which appears to be TDOT's Standard Specification Section 108.09, and that the contents of those documents speak for themselves.   Any allegations contained in Paragraph 16 of the Complaint that are inconsistent or different from the contents of those documents are denied.  All other allegations contained in Paragraph 16 of the Complaint are denied, and UMA expressly denies Twin K's entitlement to liquidated damages or any other relief it seeks in this action.

4

17.     It is admitted that attached to the Complaint as Attachment 3 is a document titled "Subcontractor Agreement", and the contents of that document speak for themselves.  Any allegations contained in Paragraph 17 of the Complaint that are inconsistent or different from the contents of that document are denied.  All other allegations contained in Paragraph 17 of the Complaint are denied, and UMA expressly denies Twin K's entitlement to liquidated damages or any other relief it seeks in this action.

18.     The allegations contained in Paragraph 18 of the Complaint are denied.

19.     The allegations contained in Paragraph 19 of the Complaint are denied.

20.     UMA lacks knowledge or information sufficient to form a belief as to the Project's substantial completion date. Upon information and belief, UMA admits that TDOT has recognized twenty-five (25) days of excused delay and that TDOT has withheld $314,000 in liquidated damages from Twin K.  Except as herein specifically admitted, the allegations contained in Paragraph 20 of the Complaint are denied.

21.     UMA admits that TDOT was responsible for delaying the Project.  UMA denies that it was solely responsible for any Project delay and denies Twin K's entitlement to liquidated damages or any other relief it seeks in this action. UMA further denies Twin K's delay days and "Revised UMA Completion" calculation.  Except as herein specifically admitted, the allegations contained in Paragraph 21 of the Complaint are denied.

22.     It is admitted that TDOT required a redesign of the Secondary Wall in the Summer of 2020.  UMA expressly denies any fault relating to the required redesign and construction of the Secondary Wall.  Except as herein specifically admitted, the allegations contained in Paragraph 22 of the Complaint are denied.

23.     It is admitted that in June 2020, UMA prepared and submitted a proposed redesign for the Secondary Wall.  It is admitted upon information and belief that Twin K submitted to TDOT a separate redesign for the Secondary Wall.  Except as herein specifically admitted, the allegations contained in paragraph 23 of the Complaint are denied.

24.     UMA lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 24 of the Complaint, and the same are therefore denied.

25.     UMA lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 25 of the Complaint, and the same are therefore denied.

26.     The allegations contained in Paragraph 26 of the Complaint are denied.

27.     The allegations contained in Paragraph 27 of the Complaint are denied.

28.     It is admitted that attached to the Complaint as Attachment 3 is a document titled "Subcontractor Agreement", and the contents of that document speak for themselves.  Any allegations contained in Paragraph 28 of the Complaint that are inconsistent or different from the contents of that document are denied.  It is further admitted that Tenn. Code Ann. § 66-34-103(a) provides that retainage may not exceed five percent (5%) of the contract amount. All other allegations contained in Paragraph 28 of the Complaint are denied.

29.     It is admitted that Twin K has improperly withheld retainage from UMA.  UMA lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Twin K's records. All other allegations contained in Paragraph 29 of the Complaint are denied.

30.     It is admitted that attached to the Complaint as Attachment 3 is a document titled "Subcontractor Agreement", and the contents of that document speak for themselves.  Any allegations contained in Paragraph 30 of the Complaint that are inconsistent or different from the

6

contents of that document are denied. It is further admitted that Twin K has wrongfully withheld amounts due UMA. All other allegations contained in Paragraph 30 of the Complaint are denied.

31.     It is admitted that Twin K has wrongfully withheld amounts due UMA. UMA expressly denies Twin K's entitlement to liquidated damages or any other relief it seeks in this action. Except as herein specifically admitted, the allegations contained in Paragraph 31 of the Complaint are denied.

32.     It is admitted that Twin K has wrongfully withheld amounts due UMA. UMA expressly denies Twin K's entitlement to liquidated damages or any other relief it seeks in this action. Except as herein specifically admitted, the allegations contained in Paragraph 32 of the Complaint are denied.

33.     UMA lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 33 of the Complaint and the same are therefore denied. UMA expressly denies that it was solely responsible for any Project delay and denies Twin K's entitlement to liquidated damages or any other relief it seeks in this action.

34.     It is admitted that UMA indicated to Twin K that UMA was preparing to file suit and that the mediation requirement contained in the Subcontractor Agreement is not an impediment to this action. Except as herein specifically admitted, the allegations contained in Paragraph 34 of the Complaint are denied.

35.     The responses to the allegations contained in paragraphs 1 through 34 are re-alleged and incorporated by reference as if fully set forth herein.

36.     The allegations contained in Paragraph 36 of the Complaint are admitted.

37.     The allegations contained in Paragraph 37 of the Complaint, including each subparagraph thereof, are denied.

7

38.     The allegations contained in Paragraph 38 of the Complaint, including each subparagraph thereof, are denied.

39.     The allegations contained in Paragraph 39 of the Complaint are denied. UMA further denies Twin K's entitlement to any of the relief it seeks in its Demand for Judgment or in this action.

40.     Plaintiff's Demand for Judgment sets forth requests for relief to which no response is required.  To the extent a response is deemed necessary, UMA denies that Plaintiff is entitled to any of the relief requested in its Demand for Judgment or to any relief at all.

Further answering the Complaint and as affirmative defenses thereto, UMA avers:

## FIRST AFFIRMATIVE DEFENSE

Twin K's Complaint is barred, in whole or in part, by the terms and conditions of the Subcontractor Agreement.

## SECOND AFFIRMATIVE DEFENSE

Twin K's Complaint is barred, in whole or in part, by Twin K's breach of the Subcontractor Agreement, including but not limited to, the requirements of Sections 3 and 4.

## THIRD AFFIRMATIVE DEFENSE

Twin K's Complaint is barred, in whole and in part, by Twin K's failure to satisfy the conditions precedent to requiring any action by UMA or for Twin K to supplement UMA's work.

## FOURTH AFFIRMATIVE DEFENSE

Twin K, by its words and conduct, is estopped from asserting any breach of contract by UMA or from seeking damages from UMA.

## FIFTH AFFIRMATIVE DEFENSE

Twin K, by its words and conduct, has waived its right to assert any breach of contract by UMA or to seek damages from UMA.

## SIXTH AFFIRMATIVE DEFENSE

Twin K is barred from any recovery against UMA by the doctrine of unclean hands.

## SEVENTH AFFIRMATIVE DEFENSE

Twin K's conduct with respect to the retainage withheld from UMA constitutes a violation of the Tennessee Prompt Pay Act.

## EIGHTH AFFIRMATIVE DEFENSE

Twin K's breach of contract claim is barred by the first material breach doctrine, as Twin K materially breached the Subcontractor Agreement prior to any alleged breach by UMA.

## NINTH AFFIRMATIVE DEFENSE

Twin K is not entitled to any delay related damages from UMA because UMA did not cause delay to the Project's substantial completion date, and in any event, Twin K cannot satisfy its burden of proof regarding entitlement to delay damages without expert proof.

## TENTH AFFIRMATIVE DEFENSE

Any amounts which could otherwise be due Twin K are offset, in whole or in part, by the damages Twin K caused UMA and/or amounts UMA is entitled to under the parties' agreement, statute, or common law.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, due to its failure to mitigate any potential claimed damages by taking steps to ensure that any of the alleged damages were minimized.

9

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff has not sustained any injury or damages as a result of any alleged breach or wrongful conduct by UMA.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent it has failed to exhaust its remedies for such claims as required by Tennessee law or otherwise.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of comparative fault because the damages it seeks are a result of its own actions or inactions.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, to the extent its claimed injuries or damages were proximately caused or contributed to by the negligence or wrongful conduct of others.

## SIXTEENTH AFFIRMATIVE DEFENSE

UMA asserts all defenses to the Complaint that are or may be available to it under Federal Rules of Civil Procedure 8(c) and 12(b).

## SEVENTEENTH AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).

## EIGHTEENTH AFFIRMATIVE DEFENSE

UMA hereby gives notice that it intends to rely upon any additional affirmative defenses as may become available or apparent during the course of discovery, and therefore reserves the

10

right to amend or supplement its answer, file further pleadings, and assert additional claims and defenses as supported by the evidence.

**WHEREFORE,** UMA denies any and all liability with regard to Plaintiff's Complaint, and prays that Plaintiff's claims against it be dismissed with prejudice. UMA further prays for an award for attorneys' fees and costs incurred in defending the claims and for costs and such other relief as is due and proper.

## UMA, GEOTECHNICAL CONSTRUCTION, INC.'S COUNTERCLAIM

UMA, having fully answered the averments of Plaintiff's Complaint, hereby assumes the role of Counter-Plaintiff pursuant to Rule 13 of the Federal Rules of Civil Procedure, and states as follows for its counterclaim against Counter-Defendant Twin K:

### PARTIES AND JURISDICTION

1.     Twin K Construction, Inc. ("Twin K") is a Tennessee corporation with its principal place of business at 13271 Scott Hwy, Helenwood, Tennessee, 37755.

2.     UMA, Geotechnical Construction, Inc. ("UMA") is a North Carolina corporation with its principal place of business at 8815 Neville Road, Colfax, North Carolina, 27235, and is registered with the Tennessee Secretary of State.

3.     This Court has personal jurisdiction over Twin K because it filed this action, regularly conducts business in Tennessee, and has established sufficient minimum contacts with Tennessee. In addition, all or a substantial part of the events or omissions giving rise to the claims in this counterclaim occurred in Tennessee.

4.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Twin K and UMA, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11

5. Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events, acts, and omissions giving rise to the claims involved in this counterclaim occurred in this judicial district.

## FACTUAL ALLEGATIONS

### *The Project & Subcontract*

6. On or about June 21, 2019, the Tennessee Department of Transportation ("TDOT") let a highway project to provide emergency slope stabilization on US-70 (SR-1) (the "Highway") in Cumberland County, Tennessee (the "Project"). TDOT's reference number for the Project was CNT234.

7. On or about July 12, 2019, TDOT awarded the Project to Twin K to serve as the Project's prime contractor.

8. On September 26, 2019, Twin K entered into a subcontract with UMA to design and build the stabilization walls comprising the Project (the "Subcontract"). A copy of the Subcontract is attached as Exhibit 3 to Twin K's Complaint (ECF No. 1-3). The original Subcontract amount was $2,273,850.00 based upon the estimated quantities for the Project.

9. The Subcontract states at section 3, Time of Performance, that: "The Subcontractor hereby agrees that the work under this subcontract is to be commenced, constructed, maintained and completed in accordance with the project schedule to be issued by the Contractor to the Subcontractor, such schedule will be mutually agreed upon and shown in Schedule A. Subcontractor acknowledges that at the time of execution of the Subcontract, Contractor is in the process of developing a detailed Working Schedule pursuant to a requirement of the Prime Contract and therefore, commencement and completion dates of the Subcontractor's work as well

12

as sequences and interrelationships between the Subcontractors [sic] Work and the work of other subcontractors have not been fully determined."

10.    Schedule A to the Subcontract does not contain a Project schedule or any other required completion date information, nor does a schedule or required completion date information exist anywhere else in the Subcontract. Further, Twin K and UMA never agreed upon a Project schedule or substantial completion date.

11.    Before Twin K supplemented UMA or assessed delay related damages, the Subcontract at section 3 required Twin K to provide "weekly updates on project progress and any deficiencies noted", and further required Twin K to provide UMA "72 hours' written notice to commence and continue correction of any noted deficiencies." Despite the Subcontract's express conditions precedent, Twin K never provided any weekly updates on Project progress to UMA and never provided any advance notice of alleged deficiencies prior to Twin K's wrongful withholding of payment owed to UMA.

12.    The Subcontract does not contain a daily liquidated damages amount that Twin K could assess UMA in the event UMA was solely responsible for delaying the Project.

13.    Pursuant to Section 7.6 of the Subcontract, UMA's progress of the work had to be "in accordance with the mutually agreed upon schedule as shown in Schedule A", and if UMA was "delayed by [Twin K] or anyone for whom [Twin K] is responsible, [UMA] shall be entitled to an extension of time and additional compensation."

14.    Under Section 4 of the Subcontract, Twin K promised to pay UMA for its work, including retainage, "within 15 days of receipt of payment by [Twin K] from [TDOT], but no later than 45 days from the receipt of a properly submitted pay application and is not conditional upon any receipt of payment from [TDOT]."

13

15. Section 4 of the Subcontract further entitled UMA to increased contract time and compensation "to account for [UMA's] reasonable costs of shutdown, de-mobilization, delay, re-mobilization, and any other reasonable costs associated with having to stop work."

16. The Subcontract, at Section 7.1, expressly instructs that "in case of any conflicting provisions within the Contract Documents, the provisions of this [Subcontract] and Schedule A shall take precedence." Thus, the Subcontract and its Schedule A take precedence over any conflicting terms in Twin K's prime contract agreement with TDOT.

17. Regarding changes required by Twin K or TDOT, Section 7.8 of the Subcontract entitled UMA to additional compensation and contract time provided "by mutual agreement of [Twin K] and [UMA]."

*Project Delays*

18. Despite the lack of a mutually agreed upon schedule, UMA mobilized to the Project in October 2019.

19. The Project encountered numerous delays and setbacks which are not attributable to UMA. Some of the delays were caused by weather/rain events, while other delays were directly attributable to TDOT.

20. The most significant delays, however, were attributable directly to Twin K due to Twin K's continual equipment failures and materials supply deficiencies, both of which were necessary and agreed by Twin K as critical to UMA's work. By failing to timely and adequately supply materials to construct the Project, Twin K severely compromised UMA's ability to perform the work.

21. Due to the downtime resulting from these Project delays, UMA was forced to incur additional costs for construction equipment that UMA had rented for the sole purpose of carrying

14

out its work on the Project. UMA had mobilized and incurred the cost for such equipment, but was subsequently unable to work for extended periods due to no fault of its own.

22.     UMA has sought reimbursement of its standby time rental equipment costs from Twin K. UMA's Change Order Request No. 3, dated October 16, 2020, and attached hereto as **Exhibit 1**, itemizes these costs in detail, which total $180,255.51. Twin K has failed to reimburse any portion of this amount to UMA.

*UMA's Redesign Costs*

23.     TDOT requested changes in the design of the soil nail wall midway through the Project.

24.     UMA's initial work pertaining to the soil nail wall was not defective or non-conforming in any way, such that UMA would somehow be responsible for the redesign costs.

25.     Twin K requested that UMA procure the plans and drawings for the redesign. UMA agreed, and expressly informed Twin K that there would be additional costs for this work.

26.     As reflected in Change Order Request No. 4, dated October 16, 2020 and attached hereto as **Exhibit 2**, UMA incurred $17,808.00 relating to the redesign requested by TDOT and Twin K. Twin K has failed to pay any portion of this amount to UMA.

*Tennessee Road Builders Charges*

27.     UMA incurred a $367.85 charge from Tennessee Road Builders in February 2020, and a $1,508.29 charge from Tennessee Road Builders in March 2020.

28.     Via email dated May 21, 2020, UMA President Brian DeSpain disputed Twin K's withholding of these charges from the monies owed to UMA. Twin K's Vice President and COO Kaleb Howard admitted via email in a response, "Brian, You are right we should have not charged the TN Road builders that was over looked and we will give that back."

15

29.     Despite its promise, Twin K has failed to reimburse any amount of the Tennessee Road Builders charges to UMA. UMA is owed a total of $1,876.14 for these charges.

*Project Billing*

30.     UMA submitted regular monthly invoices to Twin K over the course of the Project, and there were no payment issues with the first several invoices submitted from October 2019 through February 2020.

| Invoice No. | Invoice Date | Invoice Amount | Amount Paid |
|---|---|---|---|
| 1534 | October 10, 2019 | $13,500 | $13,500 |
| 1567 | November 22, 2019 | $33,329.02 | $33,329.02 |
| 1568 | December 13, 2019 | $186,272.67 | $186,272.67 |
| 1598 | January 1, 2020 | $200,899.33 | $200,899.33 |
| 1599 | January 1, 2020 | $318.24 | $318.24 |
| - | January 22, 2020 | $25,900.18 | $25,900.18 |
| 1600 | February 1, 2020 | $180,208.14 | $180,208.14 |
| 1607 | February 1, 2020 | $306,845.93 | $306,845.93 |
| **Total** | **-** | **$947,274.00** | **$947,274.00** |

31.     Payment issues began in March 2020, when Twin K suddenly and wrongfully assessed $100,000 in liquidated damages against UMA and withheld an additional $118,540.37 in retainage from UMA, all without any basis or notice to UMA. UMA's invoice for its March 2020 work is attached as **Exhibit 3**.

16

32.     Twin K subsequently failed to pay any of the amount invoiced by UMA for its April 2020 work, and withheld an additional $15,926.82 in retainage from UMA. UMA's invoice for its April 2020 work is attached as **Exhibit 4.**

33.     In May 2020, Twin K wrongfully and without providing any valid basis assessed an additional $31,000 in liquidated damages against UMA, and withheld an additional $39,866.89 in retainage from UMA. UMA's invoice for its May 2020 work is attached as **Exhibit 5.**

34.     In June 2020, Twin K wrongfully and without providing any valid basis assessed an additional $22,000 in liquidated damages against UMA, and withheld an additional $3,118.01 in retainage from UMA. UMA's invoice for its June 2020 work is attached as **Exhibit 6.**

| Invoice No. | Invoice Date | Invoice Amount | Amount Paid | Liquidated Damages Withheld | Retainage Withheld |
|---|---|---|---|---|---|
| 1674 | April 1, 2020 | $197,301.18 | $197,301.18 | $100,000 | $118,540.37 |
| 1675 | May 1, 2020 | $143,341.39 | $0 | $0 | $15,926.82 |
| 1676 | June 1, 2020 | $358,800.16 | $358,800.16 | $31,000 | $39,866.89 |
| 1677 | July 1, 2020 | $28,062.04 | $20,440.60 | $22,000 | $3,118.01 |
| **Total** | - | **$727,504.77** | **$576,541.94** | **$153,000** | **$177,452.09** |

35.     In September 2020, UMA issued two invoices to Twin K relating to additional materials and quantities required to carry out UMA's work.  The first September invoice, attached hereto as **Exhibit 7**,  reflects, $62,373.40 spent by UMA for additional shotcrete. Twin K failed to pay any of this amount, and withheld an additional $6,930.38 in retainage from UMA.

36.     The second September invoice, attached hereto as **Exhibit 8**, reflects $24,205.50 spent by UMA for additional quantities. Twin K failed to pay any of this amount, and withheld an additional $2,689.50 in retainage from UMA.

17

| Invoice No. | Invoice Date | Invoice Amount | Amount Paid | Liquidated Damages | Retainage |
|---|---|---|---|---|---|
| 1744 | September 28, 2020 | $62,373.40 | 0 | - | $6,930.38 |
| 1745 | September 29, 2020 | $24,205.50 | 0 | - | $2,689.50 |
| **Total** | **-** | **$86,578.90** | **-** | **-** | **$9,619.88** |

*Summary of UMA's Damages*

37.     Despite UMA completing its original scope and additional changes requested by Twin K and TDOT and invoicing Twin K $1,761,357.67 for such work, Twin K has only paid UMA $1,523,815.43. Twin K has therefore failed to pay no less than $237,542.24 due to UMA.

38.     Twin K has wrongfully assessed $153,000 in liquidated damages against UMA without any contractual or legal basis, and without providing notice and opportunity to cure as required by the Subcontract and Tennessee common law. Twin K continues to wrongfully withhold the assessed liquidated damages.

39.     Twin K continues to wrongfully withhold $187,071.77 in retainage from UMA.

40.     UMA has also incurred $180,255.51 in standby time rental equipment costs, $17,808.00 in soil nail wall redesign costs, and $1,876.14 in Tennessee Road Builders charges for which Twin K has failed to reimburse UMA.

41.     Twin K owes UMA a total of $777,553.15.

*UMA's Notices to Twin K*

42.     UMA sent multiple notices of nonpayment to Twin K prior to the filing of this lawsuit.

43.　　　On July 8, 2020, UMA President Brian DeSpain sent a letter to Twin K Vice President and COO Kaleb Howard objecting to Twin K's improper withholding of liquidated damages from UMA. A copy of the letter is attached as **Exhibit 9.**

44.　　　On September 2, 2020, UMA's counsel sent a formal notice of claim and Prompt Pay Act notice of intent to seek relief to Mr. Howard. A copy of the notice is attached as **Exhibit 10.**

45.　　　On January 20, 2021, UMA's counsel sent a supplemental notice of bond claim and Prompt Pay Act claim to Twin K's counsel. A copy of the supplemental notice is attached as **Exhibit 11.**

## CAUSES OF ACTION

### COUNT I - BREACH OF CONTRACT

46.　　　UMA incorporates by reference the allegations set forth in Paragraphs 1 through 42 of the Counterclaim above.

47.　　　The Subcontract is a valid and binding contract obligating Twin K to pay UMA for the services it provided on the Project.

48.　　　UMA performed all of the services and met all of its obligations to Twin K required by the Subcontract.

49.　　　Twin K has breached the Subcontract by failing to pay UMA in full for the services performed under the Subcontract, including wrongfully withheld retainage.

50.　　　As a result of Twin K's breach, UMA has incurred damages in an amount to be determined at trial, but no less than $777,553.15.

### COUNT II - BREACH OF DUTY OF GOOD FAITH & FAIR DEALING

51.     UMA incorporates by reference the allegations set forth in Paragraphs 1 through 47 of the Counterclaim above.

52.     The Subcontract is a valid and enforceable contract, and Tennessee law imposes a duty of good faith and fair dealing upon every party to a contract.

53.     By engaging in the acts and omission averred herein, Twin K has violated its duty of good faith and fair dealing owed to UMA.

54.     As a direct result of Twin K's breach of its duty of good faith and fair dealing, UMA has suffered and continues to suffer damages in an amount to be established at trial.

## COUNT III - UNJUST ENRICHMENT

55.     UMA incorporates by reference the allegations set forth in Paragraphs 1 through 51 of the Counterclaim above.

56.     Pleading in the alternative, UMA furnished Twin K valuable services in connection with the Project.

57.     UMA's services provided significant value to Twin K, as these services enabled Twin K to fulfill its obligations under its prime contract agreement with TDOT, and TDOT, as the owner of the Project, has obtained the benefit of UMA's work and the improved real property.

58.     UMA has not received full compensation from Twin K for its services rendered on the Project, and UMA is entitled to the reasonable value of such services.

59.     Twin K knew that UMA expected to be compensated in full for its services on the Project that improved the real property.

60.     To allow Twin K to avoid fully compensating UMA for its services results in Twin K's unjust enrichment to the detriment of UMA, and UMA is, thus, entitled to the reasonable value of the services it rendered.

20

## COUNT IV - VIOLATIONS OF PROMPT PAY ACT, T.C.A. § 66-34-101, *et seq.*

61.     UMA incorporates by reference the allegations set forth in Paragraphs 1 through 57 of the Counterclaim above.

62.     Twin K admits in its Complaint filed March 8, 2021 (ECF No. 1) that "Twin K's records indicate UMA has completed $1,890,809.23 worth of work on the Subcontract. Ten percent (10%) of this amount is $189,080.92, which Twin K withheld as Retainage." Compl. ¶ 29. Twin K further admits in its Complaint that "Twin K withheld an additional sum of $167,912.86, in addition to the Retainage, to cover Twin K's losses and damages[.]" Compl. ¶ 30.

63.     Tenn. Code Ann. § 66-34-104(b) provides in relevant part that "[a]s of the time of the deposit of the retained funds, the funds shall become the sole and separate property of the prime contractor or remote contractor to whom they are owed[.]"

64.     These amounts retained by Twin K far exceed "five percent (5%) of the amount of the [Subcontract]" which is the maximum allowed by Section 66-34-103(a) of the Prompt Pay Act (the "Act"), and pursuant to Section 66-34-701 of the Act, the 5% retainage restriction "may not be waived by contract."

65.     In addition to withholding more retainage than the maximum allowed amount, upon information and belief, Twin K continues to wrongfully withhold UMA's retainage beyond the time prescribed by Section 66-34-103(b) of the Act which is "within ten (10) days after receipt of the retainages from the owner."

66.     Due to Twin K's wrongful and improper withholding of UMA's retainage, Twin K has committed "a Class A misdemeanor, subject to a fine of three thousand dollars ($3,000)" per day, and UMA is entitled to the retainage and restitution in accordance with Section 66-34-103(e).

67. To the extent Twin K failed to place UMA's retainage in a "separate, interest bearing escrow account with a third party" in accordance with Section 66-34-104, UMA is entitled to the retained funds in addition to "three hundred dollars ($300) per day as damages for each and every day that the retained funds are not deposited into an escrow account."

68. In addition to the wrongful and improper withholding of UMA's retainage, Twin K has also failed to timely fund UMA's applications for payment in accordance with Section 66-34-302 of the Act.

69. Pursuant to Tenn. Code Ann. § 66-34-602(a), UMA notified Twin K of its various violations of the Act and of its intent to seek the relief provided under that Act. More than ten (10) days have passed since UMA provided such notice, and Twin K's multiple violations of the Act detailed above continue.

70. Twin K's continued wrongful withholding of UMA's retainage, despite being on notice that its actions violate the Act, is in bad faith, and UMA is entitled to its attorneys' fees pursuant to Tenn. Code Ann. § 66-34-602(d).

71. In addition to all other remedies available at law or in equity, UMA is entitled to injunctive relief for Twin K's continuing violations of the Act.

**PRAYER FOR RELIEF**

WHEREFORE, premises considered, UMA, Geotechnical Construction, Inc. prays for the following relief:

a. That proper process be issued and served upon the Counter-Defendant, requiring it to appear and answer this Counterclaim within the time required by law;

22

b.      That UMA have judgment against Counter-Defendant for breach of contract in an amount not less than $777,553.15 to be proven at trial, plus pre-judgment and post-judgment interest at the statutory rate and incidental and consequential damages;

c.      In the alternative, if for any reason the Court finds that UMA's breach of contract or other claims are not meritorious, that UMA be granted judgment for unjust enrichment against the Counter-Defendant, for the reasonable value of the services it rendered on the Project;

d.      That UMA have judgment against Counter-Defendant for its violations of the Tennessee Prompt Pay Act, Tenn. Code Ann. § 66-34-101 *et seq.*, and that the Court award UMA the damages and impose upon Counter-Defendant the fines and penalties provided for in the Act;

e.      That the Court provide UMA injunctive relief as provided for in the Prompt Pay Act due to Counter-Defendant's ongoing violations of the Act;

f.      That a constructive trust be imposed on any sums that should be used as payment to UMA for its work on the Project and that an appropriate order be entered securing UMA's interest in the retained funds;

g.      That UMA be awarded its attorneys' fees and costs it has incurred due to Counter-Defendant's bad faith refusal to comply with the Prompt Pay Act; and

h.      Any such other relief as may be appropriate including pre-judgment interest, post-judgment interest, discretionary costs and other such relief as may be just and appropriate under the Court's equitable powers.

Respectfully submitted, this 5th day of April, 2021.

/s/ W. Travis Parham
W. Travis Parham (TN BPR No. 16846)
Christopher S. Dunn (TN BPR No. 017067)
Joseph L. Watson (TN BPR No. 030397)
Michael C. Brett (TN BPR No. 037290)
WALLER LANSDEN DORTCH & DAVIS LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Telephone: (615) 850-8942
Facsimile: (615) 244-6804
chris.dunn@wallerlaw.com
joe.watson@wallerlaw.com
mike.brett@wallerlaw.com

Joseph P. Gram (*pro hac vice pending*)
CONNER GWYN SCHENCK PLLC
306 East Market Street, Suite One
Greensboro, NC 27401
Telephone: (336) 691-9222
Facsimile: (336) 691-9259
jgram@cgspllc.com

*Attorneys for UMA, Geotechnical Construction, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 5th, 2021, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

Brian C. Quist
Quist, Fitzpatrick & Jarrard, PLLC
800 S. Gay Street
2121 First Tennessee Plaza
Knoxville, TN 37929-9711
Phone: (865)-524-1873
Fax: (865)-525-2440
Email: bcquist@QCFlaw.com

/s/ W. Travis Parham