## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

| | |
|---|---|
| TWIN K CONSTRUCTION, INC. ) | |
| ) | |
| Plaintiff ) | |
| ) | Case No. 3:21-cv-00074-KAC-DCP |
| v. ) | |
| ) | |
| UMA, GEOTECHNICAL ) | Judge Katherine A. Crytzer |
| CONSTRUCTION, INC. ) | Magistrate Judge Debra C. Poplin |
| ) | |
| Defendant ) | JURY TRIAL DEMANDED |
| ) | |

### TWIN K CONSTRUCTION, INC.'S REPLY TO
### UMA GEOTECHNICAL CONSTRUCTION, INC.'S COUNTERCLAIM

COMES NOW into Court the Plaintiff/Counter-defendant, Twin K Construction, Inc. (hereafter "**Twin K**"), by and through counsel, and replies to the Counterclaim of the Defendant/Counter-plaintiff UMA, Geotechnical Construction, Inc. (hereafter "**UMA**"), as follows:

1. The allegations of paragraph 1 are admitted.

2. The allegations of paragraph 2 are admitted.

3. The allegations of paragraph 3 are admitted.

4. The allegations of paragraph 4 are admitted.

5. The allegations of paragraph 5 are admitted.

6. The allegations of paragraph 6 are denied as phrased because the bids for the Project were <u>due</u> June 21, 2019. TDOT "let" the Project out for bid earlier. The remaining allegations of paragraph 6 are admitted.

1

7. The allegations of paragraph 7 are admitted.

8. The allegations of paragraph 8 are admitted.

9. For reply to paragraph 9, it is admitted that section 3 of the Subcontract speaks for itself. Any allegations contained in paragraph 9 that are inconsistent with section 3 of the Subcontract are denied.

10. The allegations of paragraph 10 are denied. The required completion date for the Project was known to UMA prior to entering into the Subcontract and the completion date was imposed upon, and incorporated in, the Subcontract. See Twin K's second and third affirmative defenses hereinbelow. UMA's assertion that there was no completion date, meaning it could complete whenever it wanted to, or never, is not valid.

11. The allegations of paragraph 11 are denied. UMA received many, many notices that it was failing miserably to complete its work on time. UMA received many, many notices that it was failing to complete timely, it needed to correct its deficiencies, and it needed to increase production on the walls to meet the Project completion date. UMA appears to assert that during the almost 45 weeks the Project was delayed by UMA's failure to prosecute the work, <u>it could have finished timely</u> at any point during the 45 weeks if only Twin K's notices of UMA's failure to timely complete had the word "weekly update" in its title OR if UMA had received a 72 hour notice to finish timely. This assertion is also not valid.

12. The allegations of paragraph 12 are denied. The liquidated damages provisions of the Prime Contract are imposed upon, and incorporated in, the Subcontract. See Twin K's third affirmative defense.

13. For reply to paragraph 13, it is admitted that section 7.6 of the Subcontract speaks for itself. Any allegations contained in paragraph 13 that are inconsistent with section 7.6 of the Subcontract are denied. It is expressly denied that Twin K, or anyone for which Twin K is responsible, is responsible for any delay of UMA's work.

14. For reply to paragraph 14, it is admitted that section 4 of the Subcontract speaks for itself. Any allegations contained in paragraph 14 that are inconsistent with section 4 of the Subcontract are denied.

15. For reply to paragraph 15, it is admitted that section 4 of the Subcontract speaks for itself. Any allegations contained in paragraph 15 that are inconsistent with section 4 of the Subcontract are denied.

16. For reply to paragraph 16, it is admitted that section 7.1 of the Subcontract speaks for itself. Any allegations contained in paragraph 16 that are inconsistent with section 4 of the Subcontract are denied. It is denied that the Subcontract may take precedence over the Twin K's Prime Contract with TDOT.

17. For reply to paragraph 17, it is admitted that section 7.8 of the Subcontract speaks for itself. Any allegations contained in paragraph 17 that are inconsistent with section 7.8 of the Subcontract are denied.

18. The allegations of paragraph 18 are denied as phrased. UMA was fully aware of, and agreed to, the completion date for the Project. See Twin K's second and third affirmative defenses.

19. For reply to paragraph 19, it is admitted that the Project was delayed 339 days, the overwhelming majority of this delay being UMA's failure to timely prosecute

the Subcontract. It is admitted that some delays were the responsibility of TDOT and TDOT has presently conceded responsibility for 25 days of delay. The remaining allegations of paragraph 19 are denied.

20. The allegations of paragraph 20 are denied.

21. The allegations of paragraph 21 are denied.

22. For reply to paragraph 22, it is admitted that UMA seeks to blame Twin K for its failure to timely prosecute the Subcontract and has sent to Twin K the change order request mentioned. It is admitted that Twin K has not paid UMA this change order because Twin K does not owe UMA this money. The remaining allegations of paragraph 22 are denied.

23. For reply to paragraph 23, it is admitted that in the summer of 2020, the as-built Secondary Wall, as defined in the Original Complaint, (not the soil nail wall) constructed by UMA was inadequate to retain the materials behind the wall, and so TDOT requested a supplemental design for this wall. The remaining allegations of paragraph 23 are denied.

24. For reply to paragraph 24, because Twin K has not fully resolved the responsibility for the redesign issue with TDOT, presently the allegations of paragraph 24 are denied. However, because TDOT rejected UMA's redesign for the Secondary Wall, said UMA re-design could not be used, and Twin K had to pay for a second re-design. Thus, in no event is Twin K liable to UMA for said re-design costs.

25. For reply to paragraph 25, it is admitted that Twin K requested UMA to undertake the first re-design of the wall because that was UMA's responsibility under the

4

Subcontract. UMA would be entitled to reimbursement of its costs for the re-design if (1) the re-design was a change to the Prime Contract and (2) the re-design was accepted by TDOT. The remaining allegations of paragraph 25 are denied.

26. For reply to paragraph 26, because TDOT rejected UMA's redesign, said UMA re-design could not be used, and Twin K had to pay for a second re-design. Thus, in no event is Twin K liable to UMA for said re-design costs. For these reasons, it is admitted that Twin K did not pay UMA for the wall re-design costs that were not accepted by TDOT and could not be used. The remaining allegations of paragraph 26 are denied.

27. The allegations of paragraph 27 are admitted.

28. The allegations of paragraph 28 are admitted.

29. For reply to paragraph 29, it is admitted that UMA is owed $1,876.14. Twin K has not paid this to UMA as UMA owes Twin K much more than this amount. This $1,876.14 is a credit owed UMA. The remaining allegations of paragraph 29 are denied.

30. For reply to paragraph 30, UMA has been paid the amounts set forth at Twin K's fourth affirmative defense below pursuant to the procedure for paying UMA so described at that affirmative defense. Twin K properly withheld the agreed retainage and properly withheld money as offset for liquidated damages as set forth in the Original Complaint. UMA has been paid all amounts due it under the Subcontract. It is denied Twin K is further obligated to UMA for any invoices. The remaining allegations of paragraph 30 are denied.

31.     For reply to paragraph 31, UMA has been paid the amounts set forth at Twin K's fourth affirmative defense below pursuant to the procedure for paying UMA so described at that affirmative defense.  Twin K properly withheld the agreed retainage and properly withheld money as offset for liquidated damages as set forth in the Original Complaint.  UMA has been paid all amounts due it under the Subcontract.  It is denied Twin K is further obligated to UMA for any invoices.  The remaining allegations of paragraph 31 are denied.

32.     For reply to paragraph 32, UMA has been paid the amounts set forth at Twin K's fourth affirmative defense below pursuant to the procedure for paying UMA so described at that affirmative defense.  Twin K properly withheld the agreed retainage and properly withheld money as offset for liquidated damages as set forth in the Original Complaint.  UMA has been paid all amounts due it under the Subcontract.  It is denied Twin K is further obligated to UMA for any invoices.  The remaining allegations of paragraph 32 are denied.

33.     For reply to paragraph 33, UMA has been paid the amounts set forth at Twin K's fourth affirmative defense below pursuant to the procedure for paying UMA so described at that affirmative defense.  Twin K properly withheld the agreed retainage and properly withheld money as offset for liquidated damages as set forth in the Original Complaint. UMA has been paid all amounts due it under the Subcontract.  It is denied Twin K is further obligated to UMA for any invoices.  The remaining allegations of paragraph 33 are denied.

34. For reply to paragraph 34, UMA has been paid the amounts set forth at Twin K's fourth affirmative defense below pursuant to the procedure for paying UMA so described at that affirmative defense. Twin K properly withheld the agreed retainage and properly withheld money as offset for liquidated damages as set forth in the Original Complaint. UMA has been paid all amounts due it under the Subcontract. It is denied Twin K is further obligated to UMA for any invoices. The remaining allegations of paragraph 34 are denied.

35. For reply to paragraph 35, UMA has been paid the amounts set forth at Twin K's fourth affirmative defense below pursuant to the procedure for paying UMA so described at that affirmative defense. Twin K properly withheld the agreed retainage and properly withheld money as offset for liquidated damages as set forth in the Original Complaint. UMA has been paid all amounts due it under the Subcontract. It is denied Twin K is further obligated to UMA for any invoices. UMA's invoice for additional shotcrete appears extra to the Prime Contract not payable as a TDOT quantities item. Twin K did not pay UMA this invoice because the amount of shotcrete claimed was inconsistent with Twin K's calculations. Should this change, UMA might be entitled to additional compensation consistent with any revised calculations. The remaining allegations of paragraph 35 are denied.

36. For reply to paragraph 36, UMA has been paid the amounts set forth at Twin K's fourth affirmative defense below pursuant to the procedure for paying UMA so described at that affirmative defense. Twin K properly withheld the agreed retainage and properly withheld money as offset for liquidated damages as set forth in the Original

Complaint. UMA has been paid all amounts due it under the Subcontract. It is denied Twin K is further obligated to UMA for any invoices. The remaining allegations of paragraph 36 are denied.

37. For reply to paragraph 37, UMA has been paid the amounts set forth at Twin K's fourth affirmative defense below pursuant to the procedure for paying UMA so described at that affirmative defense. Twin K properly withheld the agreed retainage and properly withheld money as offset for liquidated damages as set forth in the Original Complaint. UMA has been paid all amounts due it under the Subcontract. It is denied Twin K is further obligated to UMA for any invoices. It is admitted UMA has been paid $1,523,815.45. The remaining allegations of paragraph 37 are denied.

38. For reply to paragraph 38, UMA has been paid the amounts set forth at Twin K's fourth affirmative defense below pursuant to the procedure for paying UMA so described at that affirmative defense. Twin K properly withheld the agreed retainage and properly withheld money as offset for liquidated damages as set forth in the Original Complaint. UMA has been paid all amounts due it under the Subcontract. UMA was given many, many notices that it was failing to complete on time and with that all the opportunity to cure it desired. The remaining allegations of paragraph 38 are denied.

39. The allegations of paragraph 39 are denied.

40. For answer to paragraph 40, to the extent UMA has incurred these costs, Twin K has not paid UMA these costs because said costs are not the responsibility of Twin K, except for the Tennessee Road Builders charges agreed credit (see reply

paragraphs 27 – 29) and UMA otherwise owes Twin K more money than any amount determined that Twin K may owe UMA.

41. The allegations of paragraph 41 are denied.

42. For reply to paragraph 42, while UMA may have created invoices, sent them to Twin K, and followed up with notices of non-payment, UMA has been paid the amounts set forth at Twin K's fourth affirmative defense below pursuant to the procedure for paying UMA so described at that affirmative defense. UMA has been paid all amounts due it under the Subcontract. It is denied Twin K is further obligated to UMA for any invoices. The remaining allegations of paragraph 42 are denied.

43. The allegations of paragraph 43 are admitted; however, it is denied Twin K's withholding of the liquidated damages was improper.

44. The allegations of paragraph 44 are admitted; however, it is denied Twin K's withholding of the retainage and/or liquidated damages was improper.

45. The allegations of paragraph 45 are admitted; however, it is denied Twin K's withholding of the retainage and/or liquidated damages was improper, and it is denied UMA has a valid claim against Twin K's bonds.

46. The replies to the allegations contained in paragraphs 1 through 45 are re-alleged and incorporated by reference as if fully set forth herein.

47. The allegations of paragraph 47 are denied as phrased. The Subcontract obligates UMA to perform the work competently and timely, and UMA is to be paid for work done consistent with the Subcontract less any money due from UMA to Twin K.

48. The allegations of paragraph 48 are denied.

49. The allegations of paragraph 49 are denied.

50. The allegations of paragraph 50 are denied.

51. The replies to the allegations contained in paragraphs 1 through 50 are re-alleged and incorporated by reference as if fully set forth herein.

52. For reply to paragraph 52, it is admitted that the Subcontract is a valid and enforceable contract between the Parties. It is further admitted that Tennessee law imposes an obligation for the Parties to perform their obligations under the Subcontract in good faith, as a contractual obligation, not as a separate and independent duty (which would be a tort). The remaining allegations of paragraph 52 are denied.

53. The allegations of paragraph 53 are denied.

54. The allegations of paragraph 54 are denied.

55. The replies to the allegations contained in paragraphs 1 through 54 are re-alleged and incorporated by reference as if fully set forth herein.

56. For answer to paragraph 56, it is admitted that UMA did provide services to Twin K under the Subcontract. It is denied that UMA provided all services correctly and/or timely. The remaining allegations of paragraph 56 are denied.

57. For answer to paragraph 57, it is admitted that UMA did provide services to Twin K under the Subcontract which, according to plan, was to enable Twin K to fulfil its obligations to TDOT under the Prime Contract. However, UMA did not provide all its services correctly and/or timely, and so any benefit provided by UMA must be reduced by the detriment UMA inflicted. The remaining allegations of paragraph 57 are denied.

58. The allegations of paragraph 58 are denied.

59. For reply to paragraph 59, it is admitted that Twin K knew that UMA would be compensated for work competently and timely performed consistent with the Subcontract. The remaining allegations of paragraph 59 are denied.

60. For reply to paragraph 60, Twin K has, in fact, NOT been unjustly enriched by any services provided by UMA. UMA's failure to competently and timely perform the Subcontract has cost Twin K many hundreds of thousands of dollars. The remaining allegations of paragraph 60 are denied.

61. The replies to the allegations contained in paragraphs 1 through 60 are re-alleged and incorporated by reference as if fully set forth herein.

62. With the assumption UMA has correctly copied the quoted language, the allegations of paragraph 62 are admitted. UMA failed miserably on this Project and damaged Twin K in excess of the amounts withheld.

63. The allegations of paragraph 63, to the extent they have correctly quoted the statue therein named, are not statements of fact and thus do not require a response.

64. For reply to paragraph 64, Twin K has retained the 10% retainage UMA requested. UMA conveniently forgets that it requested the retainage percentage to be 10% instead of being required to purchase payment and performance bonds, which would have tied up UMA's bonding capacity. The remaining allegations of paragraph 64 are denied.

65. The allegations of paragraph 65 are denied.

66. The allegations of paragraph 66 are denied.

67. The allegations of paragraph 67 are denied.

68. The allegations of paragraph 68 are denied. UMA has been paid the amounts set forth at Twin K's fourth affirmative defense below pursuant to the procedure for paying UMA so described at that affirmative defense. UMA has been paid all amounts due it under the Subcontract.

69. For reply to paragraph 69, UMA has been paid the amounts set forth at Twin K's fourth affirmative defense below pursuant to the procedure for paying UMA so described at that affirmative defense. UMA has been paid all amounts due it under the Subcontract. The remaining allegations of paragraph 69 are denied.

70. The allegations of paragraph 70 are denied.

71. The allegations of paragraph 71 are denied.

72. All allegations of the Counterclaim not admitted, qualified, or denied are hereby denied.

73. It is denied that UMA is entitled to the relief demanded.

74. For its first affirmative defense, Twin K relies upon all factual allegations of its Original Complaint. Any amount to which UMA might establish under its Counterclaim must be offset by amounts due Twin K under its Original Complaint.

75. For its second affirmative defense, Twin K would show, as set forth in the Original Complaint, that the completion date for the Project was known to UMA prior to entering into the Subcontract. Specifically, UMA is in the business of designing and building retaining walls such as the Primary and Secondary Walls. At some point prior to June 21, 2019, UMA saw the TDOT Notice to Bidders for this Project (Original Complaint **Attachment 1**) and located and reviewed the bid documents for the Project,

thus becoming fully aware of the Project's scope and Initial Completion Date of November 15, 2019. On June 21, 2019, UMA emailed Twin K a solicitation/quote to be a subcontractor to Twin K for the Project along with a price quote, provided as **Attachment 2** to the Original Complaint. In that solicitation/quote, UMA represented, on page 2, bullet point 6, that "UMA has budgeted sufficient time to complete this project as described above."

76. For its third affirmative defense, Twin K would show, as set forth in the Original Complaint, that the Parties agreed, in the Subcontract, to the Completion Date of November 15, 2019. Specifically, the Subcontract at Section 1, on page 1 (actually labeled "First") states that:

> All terms and conditions of the Prime Contract between the Owner [TDOT] and The Contractor [Twin K] are incorporated herein by reference and binding on the Subcontractor [UMA].

Section 7 (2) on page 4 of the Subcontract further states:

> The Subcontractor is bound to the Contractor by the terms of the Contract Documents [i. e. the Prime Contract] and assumes toward the Contractor [Twin K] with respect to the Subcontractor's work, all of the obligations and responsibilities that the contractor by the Contract Documents has assumed toward the Owner.

Accordingly, as the Prime Contract had a completion date of November 15, 2019, said completion date is imposed on, and incorporated in, the Subcontract between the Parties.

77. For its fourth affirmative defense, UMA was paid by Twin K under the traditional format for paying subcontractors on TDOT projects as follows: Twin K was paid by TDOT under the Prime Contract based on approved quantities completed, and

Twin K would in turn pay UMA on the Subcontract for quantitates completed less retainage and offset for liquidated damages.  UMA was not paid pursuant to UMA invoices.  In fact, UMA creating and sending Twin K invoices does not by that event alone create a payment obligation for Twin K. Twin K's payments to UMA and payments to UMA's concrete supplier were as follows:

| | | |
|---|---|---|
| (1) | Twin K check #39995 | $   8,479.81 |
| (2) | Twin K check #35193 | $250,840.30 |
| (3) | Twin K check #35369 | $200,899.33 |
| (4) | Twin K check #35458 | $180,208.14 |
| (5) | Twin K check #35688 | $306,169.85 |
| (6) | Twin K check #35895 | $120,265.88 |
| (7) | Twin K check #36159 | $  24,165.03 |
| (8) | Twin K check #36529 | $330,900.17 |
| (9) | Twin K check #363419 | $   8,353.12 |
| (10) | Pymt. to UMA's concrete vendor | $  93,533.82 |
| | Total checks & payments | = $1,523,815.45 |

78. For its fifth affirmative defense, Twin K would show that UMA insisted upon the retainage percentage so that it would not have to procure payment and performance bonds and tie up its bonding capacity.  Twin K accommodated UMA's request and the agreed retainage percentage was then to be 10%.

79. For its sixth affirmative defense, Twin K is not required by law or under the Subcontract to continue actions that are proven to be futile such as providing UMA notices of its failures with the words "weekly updates" in its title or to give UMA notices with 72 hours to cure when in fact UMA could never cure in such time period.

14

80. For its seventh affirmative defense, it was UMA that it requested a 10% retainer *in lieu* of it having to provide payment and performance bonds and tie up its bonding capacity. Twin K agreed to accommodate UMA's request. As such, UMA is estopped, and otherwise has unclean hands, to now claim that Twin K retaining the 10% retainage which UMA requested is somehow treating UMA unfairly or violating the Prompt Pay Act. Furthermore, the 5% retainage provision of the Prompt Pay Act is not one of the un-waivable provisions of the Prompt Pay Act, and in requesting Twin K withhold a 10% retainage, indeed UMA waived it.

WHEREFORE, Twin K prays the Court dismiss UMA's Counterclaim, grant Twin K the relief requested in its Original Complaint, and grant to Twin K such further and general relief to which it may be entitled.

Twin K demands a JURY to try the issues joined by this Counterclaim.

Submitted this __26th___ day of __April_____, 2021.

*/s/ Brian C. Quist*
_____
Brian C. Quist,      BPR #012762
QUIST, FITZPATRICK & JARRARD, PLLC
800 South Gay Street, Suite 2121
Knoxville, Tennessee 37929-2121
(865) 524-1873
bcquist@QFJlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the **26th** day of **April**, **2021**, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail.

*/s/ Brian C. Quist*

_____
Brian C. Quist  TN BPR # 012762